STATE of Missouri, Respondent,

v.

Jimmie R. FERGUSON, Appellant.

No. 62968.

Supreme Court of Missouri,
Division No. 1.

Nov. 10, 1981.

Rehearing Denied Dec. 8, 1981.

Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

DONALD BARNES, Special Judge.

Appellant was convicted in the Circuit Court of Jackson County of the first degree murder of Robert Baum, a storekeeper, in Baum's place of business, while perpetrating the offense of robbery. He was sentenced to life imprisonment.

After appellant's arrest, appellant gave a statement to the police admitting the offense and led officers to various locations where shells, shell casings, and his partially burned jacket had been discarded. He also took officers to the location where he stated he disposed of the gun he used, but it was not found.

No issue is made as to the voluntariness of the statement, but appellant contends his arrest was unlawful, and, hence, his statement and the objects found and used in evidence were inadmissible as fruits of the illegal arrest.

A review of the facts adduced in the suppression hearing and the trial is required. The record of the suppression hearing reveals the following. Officer Lightfoot of the Kansas City Police Department, who had previous knowledge of the offense, received a call from a fellow officer, Sgt. Reeder, of the traffic division of the Kansas City Police Department, who indicated another employee in his department, one Pam Ferguson, wanted to talk to him (Lightfoot). Pam Ferguson took the telephone and explained to Lightfoot that she was the sister of the appellant, that appellant's girlfriend had told her that her brother, the appellant, was responsible for the shooting of Baum, that he was at her mother's house, and the gun appellant used might be found in an automobile belonging to the girlfriend's mother. She also expressed concern for the safety of her parents and the appellant, and requested that her identity as an informant not be revealed.

Officer Lightfoot and other officers then went immediately to the appellant's mother's address without a warrant for appellant's arrest. The officers explained it would have taken them at least two hours to get a warrant in view of the fact it was late at night, nearly midnight. Officer Lightfoot, Officer Reeder and another officer went to the front door of the residence, and other officers went to the back door.

Officer Lightfoot and Officer Reeder testified they knocked on the door and explained to parties inside that they were looking for the appellant to talk to him and that the door was voluntarily opened by occupants of the house who were later determined to be the appellant's father and one or more of his sisters, one of whom had invited them in. Upon their entry into the living room of the dwelling, they were told by one of the occupants that appellant was in the bathroom and, momentarily, the appellant appeared in the living room with one of the officers and was thereafter arrested, given his *Miranda* warning and taken into custody. Officer Lightfoot also testified appellant's mother, Mrs. Ferguson, drove up outside, parked her car and entered into the house after appellant had emerged from the bathroom and while appellant and officers were seated in the living room.

Appellant, by his mother, Mrs. Ferguson and his sister, Brenda, contended the officers were not voluntarily admitted, but pushed their way in unannounced.

The evidence disclosed Mrs. Ferguson was entering the house from a rear door at the same time the officers were entering the house after being admitted at the front door and that she was not in a position to observe who, if anyone, opened the door and admitted the officers. Brenda, appellant's sister, stated that she was near the front door talking to her mother at the time the officers entered, which contradicts her mother's testimony. The testimony of the various witnesses was contradictory as to whether the officers announced their purpose upon arriving at the front door.

The trial court clearly found the testimony of the officers to be believable and the contradictory testimony of appellant's witnesses otherwise. The trial court is in a

superior position to judge the credibility of the witnesses and the believability of the evidence, and we find no basis to disturb that court's determination on the issue.

Evidence at trial on the same question was substantially the same as elicited in the suppression hearing. Additionally, appellant's girlfriend, one Mary Sammons, testified she had given appellant a ride on the night of the murder, that he was upset and crying, and that he stated to her that he shot someone but he did not know why. Another witness, who found the victim in his store dying of multiple gunshot wounds also testified.

It is appellant's position that no probable cause existed for his arrest and the evidence thereafter obtained including his statement admitting his guilt were inadmissible, but that if probable cause for his arrest existed, under *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639,. police may not enter without permission into a residence to make a warrantless arrest.

■ We turn first to the issue of probable cause for appellant's arrest. Probable cause for an arrest may be found in information received by an officer, even if substantially hearsay, from informant where the credibility and trustworthiness of the information can reasonably be established by verifying or corroborating the information against facts obtained from other sources or within the knowledge of the officer or other officers or law enforcement agencies. This Court in an en banc decision, *State v. Wiley*, 522 S.W.2d 281 (Mo. banc 1975) has exhaustively treated this subject establishing the test for validity of arrests based on informants' tips.

■ Here, the arresting officer knew the crime had been committed. The informant was an employee of the Kansas City Police Department referred to him by a sergeant in the Kansas City Police Department whom he knew. The informant was aware of a crime which the officer also knew had been reported shortly before. She revealed her source and, more importantly, was im-

plicating a member of her own family and indicating a concern for the safety of other members of her family. Her report was, under the circumstances, plausible and worthy of belief and meets the tests of *Wiley.*

In most instances, an officer receiving such information will not personally be acquainted with the informant so as to have independent knowledge of the informant's credibility but must out of reasonable concern for the safety of the public make a reasonable attempt to test such information against known facts and common standards of human conduct and then act accordingly. The instant facts support the trial court's determination that probable cause existed for appellant's arrest.

■ As to appellant's second point, we conclude the arresting officers gained entrance to the dwelling in which appellant was found by consent. The evidence strongly supports the trial court's findings that Officers Lightfoot and Reeder, after knocking and stating that their purpose was to make inquiry of the appellant, were admitted by one of the persons within the residence, either appellant's father or his sister. While appellant's mother and sister deny this account, their testimony as to their respective positions within the house and their ability to observe and hear what took place are contradictory of one another, and in Mrs. Ferguson's case, there exist contradictions within her own testimony.

*Payton v. New York, supra,* does not present an issue of consensual entry. No one was in the dwelling entered by the officer in that case. The decision, however, strongly indicates a consensual entry exception from the holding that a warrantless entry into a private residence is unlawful. We hold that such an entry upon consent of the residents or parties in charge of the residence is lawful.

We conclude the statement of the appellant to police and the physical evidence found by the police after the arrest were properly admitted.

While it is clear that the arrest of the appellant transpired before the decision in

*Payton* (April 15, 1980) and the trial was later, it is not necessary to determine if the application of the rule expressed by *Payton* is prospective only or retroactive because we conclude the entry by the officers was consensual.

For the foregoing reasons, we affirm.

MORGAN, P. J., BARDGETT and RENDLEN, JJ., and SLOAN and STEEL-MAN, Special Judges, concur.